Filed 2/10/21  Hernandez v. Gaytan CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| AARON HERNANDEZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DENISE ANAHI GAYTAN,<br><br>    Defendant and Respondent. | B303657<br><br>(Los Angeles County<br>Super. Ct. No. BF058577) |

APPEAL from an order of the Superior Court of Los Angeles County.  Joseph Lipner, Judge.  Affirmed.

Castellanos Law Group and Gabriel Castellanos for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

———————————————

In 2017, father Aaron Hernandez and mother Denise Gaytan stipulated to joint legal custody of their young son L.U. (born 2016), with liberal visitation for father. In 2019, mother requested permission to move with L.U. to New Mexico, which father opposed. The trial court held a hearing on the request, during which it heard testimony from mother, father, several of father's family members, and a Parenting Plan Assessment Evaluator.

The evaluator recommended granting mother's request: "Given that the child has been under the primary care of the mother and given that he is more emotionally attached to his mother, disrupting this relationship would have a more detrimental effect on the child than if he were to be under the primary care of the father." The evaluator noted father had "a lot of support" in Los Angeles from family and L.U. was "very, very close" with his half brother from father, "so this was really not an easy decision. This was really hard."

The court agreed with this recommendation and granted mother's request. Father has appealed the move-away order. Mother has filed no respondent's brief. We affirm.

Generally, the trial court may change a custody order and allow a parent to move away with a child by evaluating " 'the effects of relocation on the "best interest[s]" ' " of the child. (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 21.) The court considers the following factors: "the children's interest in stability and continuity in the custodial arrangement; the distance of the move; the age of the children; the children's relationship with both parents; the relationship between the parents including, but not limited to, their ability to communicate and cooperate effectively and their willingness to put the interests of the

2

children above their individual interests; the wishes of the children if they are mature enough for such an inquiry to be appropriate; the reasons for the proposed move; and the extent to which the parents currently are sharing custody." (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1101 (*LaMusga*); see *F.T. v. L.J., supra,* at pp. 20–21.)

We review the court's order under the "deferential abuse of discretion test. [Citation.] The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child. We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.)

The trial court stated its extensive findings on the record in open court. We quote those findings here:

"First of all, under Family Code section 7501(A), a presumption arises that a parent with sole physical custody of a child has the right to change the child's residence subject to the court's power to restrain a removal prejudicial to the child's rights or welfare.

"I will note from a starting point that [mother] has overwhelming physical custody of [L.U.] and has from birth. So to the extent this standard applies, [father] would have to show detriment to [L.U.] from the move.

"The court recognizes that detriment to a child caused by the proposed move's effect on the noncustodial parent's relationship with the child may be sufficient to justify a change in custody when considered in light of all relevant factors. This initial showing has not been made.

"The court finds that [father] has not proven a detriment to [L.U.]. It will interfere with his relationship, but I don't think that it will be detrimental to [L.U.] in the sense of cutting off the relationship.

"I believe that the parenting plan provides a great deal of time for father, [L.U.'s half brother], and [L.U.] all to be with [L.U.] in California in a quality way that will maintain the relationship.

"But the law is not crystal clear about whether that standard applies here in this context because we are prejudgment and there is no final order. So the court has considered as though that presumption doesn't apply, and the court is just applying the *LaMusga* factors. And the court has carefully considered the *LaMusga* factors, and I will go through them briefly.

"First, the court has considered a child's paramount interest and stability and continuity in the custodial arrangement and the harm that may result from disruption of established patterns of care and emotional bonds. This factor strongly supports the move to New Mexico.

"The child lives primarily with [mother], and the court finds that it would be a big disruption to change custody so that the child is living primarily with [father].

"The child sees [father] on a regular basis, and that is very important. The parenting plan changes that schedule but still allows [father] to have frequent time with [L.U.].

"The court has considered the evaluator, who recommended that [L.U.] be allowed to move with the mother, and I will point out that the evaluator reached the conclusion that the child— while the child clearly loves both parents very much, the child is more bonded with mother, and that mother presented and

4

approached the issues in a way that the evaluator concluded would make it more likely that she would facilitate the relationship with father.

"And as I have said, the evaluator expressed confidence in her decision, and the court has now heard the evidence, judged credibility. The court finds both parents very credible, and the court concurs with that decision.

"The court has considered the distance of the move. The distance is significant. It is not next door. On the other hand, it is not a move to the other side of the country either. It is a 10-hour drive away. So it is not ideal, but it is also not the ends of the Earth, and this factor is neutral in connection with this matter.

"The court has considered the child's age. [L.U.] is just three years old. This factor is somewhat against the move. It is a young age. It is harder because he is establishing a relationship now with his father. So the court has considered this carefully in balancing the various factors.

"[¶] . . . [¶]

"The court has considered [L.U.]'s relationship with both parents. This factor is also neutral. [L.U.] clearly loves both parents. And either way, whether he moves in with father and mother moves away or he moves with mother and father remains here, it is going to be a difficult change.

"The court should consider each child's wishes if they are mature enough for the inquiry to be appropriate. At three years old, it is not appropriate to ask [L.U.] his preferences.

"The court has considered the reason for the move. This factor strongly supports the move-away. [Mother] is having a baby with another man. She is engaged to the other man. [L.U.]

5

is going to have a stepfather.  She wants to move in with her fiancé, and that is a very strong reason for a move.  I find that move is in good faith.  It is not for purposes of taking [L.U.] away from his father.

"The court has considered the extent to which the parents currently share custody.  As I've mentioned, [mother] has [L.U.] most of the time, and so stability favors the move that [L.U.] be able to go with her."

The court also "very seriously considered the important point about [L.U.'s half-brother] and [L.U.] and their relationship."  It acknowledged father's reliance on *In re Marriage of Williams* (2001) 88 Cal.App.4th 808, which held there must be compelling circumstances to separate siblings with a move-away order.  (*Id.* at pp. 814–815.)  The trial court stated it had "factually considered the issue in considering the stability of the relationship, and it is not ideal that [mother] is moving in a way so that [L.U.] and [his half-brother] will not see each other as frequently.  However, again, the parenting plan will allow [L.U.'s half-brother] and [L.U.] to be with one another for frequent periods."

Father does not contend the court's factual findings were wrong or unsupported by the evidence.  He simply urges us to reweigh the factors to reach a contrary conclusion.  We cannot. (*LaMusga, supra,* 32 Cal.4th at p. 1093 ["The weight to be accorded to such factors must be left to the court's sound discretion.  The Court of Appeal erred in substituting its judgment for that of the superior court."].)  We have reviewed the record.  The court's decision fell within its broad discretion.

Father also contends the court improperly applied the presumption found in Family Code section 7501, subdivision (a)

that a parent with sole custody is entitled to change the residence of a child absent a showing of detriment.  (See Fam. Code, § 7501, subd. (a) ["A parent entitled to the custody of a child has a right to change the residence of the child, subject to the power of the court to restrain a removal that would prejudice the rights or welfare of the child."].)  He claims this presumption does not apply because he and mother actually shared physical custody of L.U., whereas the court erroneously found mother "has overwhelming physical custody of [L.U.] and has from birth."

Father is correct that when the parents have joint physical custody, the court must evaluate the *LaMusga* factors de novo.  (*In re Marriage of Seagondollar* (2006) 139 Cal.App.4th 1116, 1127.)  But even if the trial court erred in finding mother effectively had sole custody, father suffered no prejudice because the court *alternatively* assessed the *La Musga* factors de novo and it reached the same conclusion.

As quoted above, the court noted the "law is not crystal clear" whether the presumption would apply to this prejudgment matter.  (See, e.g., *F.T. v. L.J., supra,* 194 Cal.App.4th at p. 19 ["[A]bsent an existing judicial custody determination, the [Family Code] section 7501 rebuttable presumption does not apply."].)  In light of this uncertainty, the court applied the presumption in Family Code section 7501, subdivision (a), but then alternatively "considered as though that presumption doesn't apply and the court is just applying the *La Musga* factors."  The court then weighed the relevant factors.  We must assume the court followed the law.  (*LaMusga, supra,* 32 Cal.4th at p. 1093 [order is presumed correct].)  Thus, even if the court had found the parties had joint physical custody triggering de novo review, it still would have issued the move-away order.

7

## DISPOSITION

The order is affirmed.  Mother made no appearance, so father shall bear his own costs on appeal.

BIGELOW, P. J.

We Concur:

GRIMES, J.

STRATTON, J.